UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, et al., Plaintiffs, | ) ) ) ) ) |
| v. | ) Civil Action No. 1:15cv952 ) |
| DESIGN BUILD MECHANICAL CORPORATION, VA, Defendant. | ) ) ) ) ) |

<u>REPORT AND RECOMMENDATION</u>

THIS MATTER comes before the Court on Plaintiffs' Motion for a Default Judgment (Dkt. 72). After a representative for defendant Design Build Mechanical Corporation, VA failed to respond to plaintiffs' Motion or to appear at the hearing before Judge Nachmanoff on June 10, 2016, the undersigned Magistrate Judge took this matter under advisement.[1]

I. <u>INTRODUCTION</u>

**A. Background**

Plaintiff Allied World Specialty Insurance Company is a Delaware corporation with its principal place of business in

---

[1] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), the Declaration of Edward R. Brown in Support of Request for Clerk's Entry of Default ("Brown Decl.") (Dkt. 68-1), Plaintiffs' Motion for a Default Judgment ("Mot. Default J.") (Dkt. 72), Plaintiffs' Memorandum in Support of its Motion for a Default Judgment ("Mem. Supp. Mot. Default J.") (Dkt. 73), the Declaration of Maria Gliganic in Support of Plaintiffs' Motion for a Default Judgment ("Gliganic Decl.") (Dkt. 73-1), the Declaration of James A. Keating in Support of Plaintiffs' Motion for a Default Judgment ("Keating Decl.") (Dkt. 78), and all attachments and exhibits submitted with those filings.

1

Farmington, Connecticut, and plaintiff Allied World Reinsurance Company is a New Hampshire corporation with its principal place of business in New York, New York (collectively "plaintiffs"). (Compl. ¶¶ 7-8.) Defendant Design Build Mechanical Corporation, VA ("Design Build") is or was a Virginia corporation with its principal place of business in Reston, Virginia, and defendant Ryan N. Rhed was the Chief Financial Officer ("CFO") of Design Build from November 2012 to September 2014. (Id. at ¶¶ 9-10.)

This action arises from surety bonds that plaintiffs, insurance companies, issued for Design Build, a large mechanical and plumbing contractor. (Id. at ¶¶ 1-2, 28.) Plaintiffs state that they issued these bonds in reliance on the information and financial statements provided by Design Build, which showed that the company was in a solid financial position and was on track to have a net income of several million dollars in 2013. (Id. at ¶ 2.) However, in late 2013, it emerged that Design Build had write-downs totaling more than $17 million, which rendered the company insolvent. (Id. at ¶¶ 3-4.) Plaintiffs then spent over $10 million fulfilling their bond obligations pursuant to the surety bonds issued for Design Build. (Id. at ¶¶ 6, 58.)

On July 28, 2015, plaintiffs filed this action against Design Build and its CFO, Ryan Rhed, alleging breach of the Capital Retention Agreement by Design Build, negligent misrepresentation/constructive fraud and actual fraud by Design

Build and Rhed, and breach of fiduciary duty by Rhed. (Compl. ¶¶ 64-86.) Plaintiffs assert that defendants provided materially false information in the financial statements given to plaintiffs, which defendants knew or should have known were materially false. (Id. at ¶¶ 71-74, 77-80.) Plaintiffs say they relied on this information and suffered millions of dollars in losses as a result. (Id. at ¶¶ 6, 28-34, 58.) Consequently, plaintiffs now seek their damages. (Mot. Default J. 1; Mem. Supp. Mot. Default J. 5-6.)

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject matter and personal jurisdiction over the defaulting party.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, which provides that district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000.00 and is between citizens of different states. See 28 U.S.C. § 1332(a)(1). Plaintiff Allied World Specialty Insurance Company is a Delaware corporation with its principal place of business in Connecticut, and plaintiff Allied World Reinsurance Company is a New Hampshire corporation with its principal place of business in New York. (Compl. ¶¶ 7-8.) Defendant Design Build is or was a Virginia corporation with its principal place of business in Virginia, and defendant Ryan

Rhed is a citizen of Virginia. (Id. at ¶¶ 9-10.) Furthermore, plaintiffs in their Complaint sought at least $10,989,458.00 in damages. (Id. at 18.) Therefore, because there is complete diversity and a sufficient amount in controversy, this Court has subject matter jurisdiction over this dispute.

This Court has personal jurisdiction over defendant Design Build because Design Build is or was a corporation organized under the laws of Virginia with its principal place of business in Reston, Virginia. (Compl. ¶ 9.) Pursuant to 28 U.S.C. § 1391(b), venue is proper in this judicial district because both defendants are residents of Virginia and defendant Design Build resides in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district. (Compl. ¶ 15.)

### C. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court. Fed. R. Civ. P. 4. On July 30, 2015, plaintiffs' private process server served defendant Design Build Mechanical Corporation, VA by serving Carl E. Williams, Jr. with a copy of the Summons and Complaint. (Dkt. 7.) Mr. Williams was authorized to accept on behalf of defendant Design Build. (Dkt. 7.) Therefore, service was proper under Federal Rule of Civil Procedure 4(h).

**D. Grounds for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Design Build filed an Answer to plaintiffs' Complaint on August 28, 2015. (Dkt. 14.) However, over the past various months Design Build has ceased participating in and defending this case. Namely, Design Build: (1) failed to comply with the Court's January 21, 2016 order that it fully respond to plaintiffs' discovery requests; (2) following the withdrawal of its counsel, failed to comply with the Court's March 7, 2016 order that it file a notice of appearance of counsel by 5:00 p.m. on March 28, 2016; (3) failed to respond or object to plaintiffs' interrogatories and requests for admission that were served on February 8, 2016; (4) failed to object to or appear for a properly-noticed deposition under Federal Rule of Civil Procedure 30(b)(6) on March 7, 2016; (5) failed to file any pre-trial submissions as required by the Court's Scheduling Order and order dated April 20, 2016; and (6) failed to appear for the Court's final pretrial conference on April 21, 2016. (Brown Decl. ¶¶ 5-13; Mem. Supp. Mot. Default J. 3; Dkts. 24, 36, 43, 67, 69.) Therefore, Design Build has clearly failed to "otherwise defend" this case.

Accordingly, on April 21, 2016, the Honorable T.S. Ellis, III directed plaintiffs to seek the entry of default and default judgment against Design Build. (Dkt. 70.) On April 22, 2016, the Clerk of this Court entered default as to Design Build pursuant to plaintiffs' Request for Entry of Default and Federal Rule of Civil Procedure 55(a). (Dkt. 71.) Plaintiffs then filed a Motion for Default Judgment on April 26, 2016. (Dkt. 72.) After a representative for Design Build failed to respond to plaintiffs' Motion or to appear at the hearing before Judge Nachmanoff on June 10, 2016, the undersigned Magistrate Judge took this matter under advisement.[2]

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiffs have established the following facts.

Plaintiff Allied World Specialty Insurance Company, formerly known as Darwin National Assurance Company, is a Delaware corporation with its principal place of business in Farmington, Connecticut, and plaintiff Allied World Reinsurance Company is a New Hampshire corporation with its principal place of business in New York, New York. (Compl. ¶¶ 7-8.) Defendant Design Build is or was a Virginia corporation with its principal

---

[2] The undersigned notes that all claims between plaintiffs and defendant Ryan Rhed have been dismissed with prejudice as settled. (Dkt. 76.)

6

place of business in Reston, Virginia. (Id. at ¶ 9.) Design Build, which commenced operations in late 2010, was a one of the largest mechanical and plumbing contractors in the metropolitan Washington, D.C. area. (Id. at ¶¶ 1, 16.) According to the Virginia State Corporation Commission, Design Build's corporate status was automatically terminated as of March 31, 2015, and its affairs have passed to its directors. (Id. at ¶ 9.)

In late 2012, Alliant Insurance Services, Inc. ("Alliant"), the broker for one of Design Build's investors, contacted plaintiffs on behalf of Design Build to discuss the possibility of plaintiffs providing a surety program for Design Build. (Compl. ¶ 20.) Alliant sent a memo to plaintiffs describing Design Build's bonding history and its needs going forward, which advised that, based solely on existing contracts, Design Build expected to make $3.8 million in net profit in 2013. (Id. at ¶ 21.) Plaintiffs then requested detailed information about Design Build, including the reason for certain "underbillings" on five projects. (Id. at ¶ 22.) Design Build, through Alliant, provided much of the information requested, and explained that with one exception, the underbillings reflected materials that were stored for future use (thus Design Build would later be paid to cover those costs). (Id. at ¶ 23.) Plaintiffs further asked for details regarding Design Build's project selection, estimating, purchasing, and project management. (Id. at ¶ 25.)

In response, Design Build, again through Alliant, provided a memo emphasizing Design Build's strong estimating, budgeting, and project management capabilities, including resumes of key personnel to support these claims, and also detailing Design Build's cost and budget control systems. (Id. at ¶¶ 26-27.)

On January 7, 2013, based on the information provided, plaintiffs agreed to provide a surety program for Design Build subject to certain conditions, including an indemnification agreement and a capital retention agreement that were signed on January 9, 2013 and returned executed to plaintiffs on January 11, 2013. (Compl. ¶ 28, Ex. 1.) On January 9, 2013, plaintiffs issued their first bond for Design Build, in the amount of $5,454,000.00. (Id. at ¶ 29.) From January 9, 2013 to November 15, 2013, plaintiffs ultimately issued eleven payment and performance bonds in Design Build's surety program, totaling $67,249,075.00. (Id.)

As bonds were requested and issued, plaintiffs continued to request financial and other information, which Design Build provided. (Id. at ¶ 30.) Design Build knew that plaintiffs would rely upon this information. (Id. at ¶ 32.) Plaintiffs then relied upon this information and the previous memos provided in deciding to issue the bonds; indeed, plaintiffs would not have issued the bonds had they known that the information provided was materially incorrect. (Id. at ¶¶ 33-34.)

8

The key consideration for Design Build's financial health was gross profit, because Design Build's other assets were insufficient to cover its consistent costs. (Compl. ¶¶ 38-40.) For 2011, 2012, and the first three quarters of 2013, Design Build reported and/or projected significant gross profits such that its net income after taxes was approximately $1.4 million in 2011, $1.7 million in 2012, and was expected to be over $2 million in 2013. (Id. at ¶¶ 41-43.) However, in the fourth quarter of 2013, Design Build's year-end financials showed a dramatic increase in projected costs without a commensurate increase in projected revenues, resulting in a decrease in projected profits (a "write-down") of more than $17 million for the same projects as had previously been reported on. (Id. at ¶ 44.) This write-down, which was spread across the board and affected almost all of Design Build's active projects, immediately rendered Design Build insolvent. (Id. at ¶¶ 45-46.)

Plaintiffs learned of Design Build's financial trouble in early 2014 when they received Design Build's financial information relating to the fourth quarter of 2013. (Id. at ¶ 56.) On April 8, 2014, Design Build requested that plaintiffs lend it $3 million to allow it to complete the jobs for which plaintiffs had issued bonds. (Id. at ¶ 57.) Plaintiffs agreed to a $2.5 million line of credit subject to various measures to protect plaintiffs' loan. (Id.) Approximately $2.3 million of

9

that line was funded but never repaid.[3] (Id.) As of April 7, 2016, plaintiffs have additionally made $9,063,103.94 in direct payments to third parties in connection with Design Build's surety bonds. (Gliganic Decl. ¶ 6.) Plaintiffs also seek to recover the initial payment of $2,230,000.00 that they made to Design Build to fund an operating account, which was never repaid. (Id. at ¶ 7; Compl. ¶ 58.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiffs' claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs bring three claims against Design Build: (1) breach of the Capital Retention Agreement; (2) negligent misrepresentation; and (3) fraud. (Compl. ¶¶ 64-81.)

**A. Breach of the Capital Retention Agreement**

Plaintiffs first allege that Design Build breached the Capital Retention Agreement entered into by plaintiffs and

---

[3] Plaintiffs, however, do not seek to collect the line of credit amount in this litigation. (Compl. ¶ 57.)

Design Build by failing to maintain adequate total shareholders' equity. (Compl. ¶¶ 64-69.) Pursuant to the choice of law provision in the Capital Retention Agreement, New York law governs this claim. (Id. at Ex. 1.) See Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) ("Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances . . . ."); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that a district court sitting in diversity applies the choice-of-law rules of the state in which it sits). "To establish a claim of breach of contract under New York law, a plaintiff must demonstrate '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" Zorbas v. U.S. Trust Co., N.A., 48 F. Supp. 3d 464, 474 (E.D.N.Y. 2014) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)).

In this case, plaintiffs have pled sufficient facts to support their breach of contract claim. First, the Capital Retention Agreement was signed by the parties and represents a contract between the parties. (Compl. ¶ 65, Ex. 1.) Second, plaintiffs issued various surety bonds that Design Build requested, thereby performing their obligations under the Capital Retention Agreement to consider such requests from

11

Design Build. (Id. at ¶¶ 28-29, Ex. 1.) Third, Design Build did not perform in accordance with the Capital Retention Agreement, which required that Design Build maintain total shareholders' equity of not less than $2.5 million, or in the alternative to provide equivalent collateral within ten days of making a payment that reduced stockholders' equity below $2.5 million. (Id. at ¶ 66, Ex. 1.) As of December 31, 2013, Design Build's total shareholders' equity was negative $7,537,000.00, and Design Build did not offer any equivalent collateral. (Id. at ¶ 67.) Fourth, as a result of Design Build's lack of any equity to discharge its obligations under the bonds issued by plaintiffs, plaintiffs had to pay millions of dollars to fulfill these obligations. (Id. at ¶¶ 58, 69; Gliganic Decl. ¶¶ 6-8.) Therefore, plaintiffs have sufficiently stated a claim for breach of contract.

### B. Negligent Misrepresentation

Plaintiffs next allege negligent misrepresentation, also referred to as constructive fraud, by Design Build. (Compl. ¶¶ 70-75.) Notably, in deciding defendant Ryan Rhed's Motion to Dismiss in this case, the Court held that Pennsylvania law applies to this claim. (Mem. Supp. Mot. Default J. Ex. 2 at 20-22; Dkt. 25 at 20-22.) Under Pennsylvania law, negligent misrepresentation occurs when: (1) the defendant misrepresents a material fact; (2) under circumstances in which the defendant

12

ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

Here, plaintiffs have satisfied each of these elements. First, plaintiffs have pled that Design Build misrepresented material facts in the financial information it provided to plaintiffs. (Compl. ¶¶ 4, 37, 47, 72.) Namely, the financial information and reports given to plaintiffs through September 2013 presented actual and expected values that starkly contrasted the numbers divulged in Design Build's financial statement for the fourth quarter of 2013. (Id. at ¶¶ 4, 21-23, 36-37, 43-45, 47.) Second, plaintiffs have shown that Design Build should have known that the information was false, given the scale of the write-down and considering it affected almost all of Design Build's active projects. (Id. at ¶¶ 45, 47, 51, 73.) Third, plaintiffs have pled that Design Build intended to induce plaintiffs into issuing the surety bonds, knowing that plaintiffs would rely on the information. (Id. at ¶¶ 32, 71.) Finally, Design Build's actions caused injury to plaintiffs because plaintiffs reasonably relied on the information provided, issued bonds they otherwise would not have issued, and ultimately paid millions of dollars to fulfill their obligations under those bonds following Design Build's insolvency. (Id. at

13

¶¶ 33-34, 52, 58, 75; Gliganic Decl. ¶¶ 6-8.) Therefore, plaintiffs have sufficiently stated a claim for negligent misrepresentation by Design Build.

### C. Fraud

Plaintiff's final cause of action against Design Build is for fraud. (Compl. ¶¶ 76-81.) Like plaintiffs' negligent misrepresentation claim, this Court has held that Pennsylvania law applies to plaintiffs' fraud claim. (Mem. Supp. Mot. Default J. Ex. 2 at 20-22; Dkt. 25 at 20-22.) The elements of fraud, also referred to as intentional misrepresentation, are: (1) a representation by defendant; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999). Furthermore, "a party must state with particularity the circumstances constituting fraud or mistake," although intent and knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

Here, plaintiffs have pled that Design Build made material representations in the financial information that it provided to plaintiffs, namely regarding the company's earnings and costs, current financial status, and expected income. (Compl. ¶¶ 2, 21-

14

23, 26-27, 36-37, 43, 77-78.) Furthermore, plaintiffs state that the information provided was false, considering that the actual and expected values provided through September 2013 starkly contrasted the numbers divulged in the fourth quarter of 2013, and that Design Build knew of this falsity. (Id. at ¶¶ 4, 21-23, 36-37, 43-45, 47, 78-79.) Additionally, as mentioned previously, plaintiffs claim Design Build intended to induce plaintiffs into issuing the surety bonds, knowing that plaintiffs would rely on the information. (Id. at ¶¶ 32, 77.) Finally, plaintiffs show that they justifiably relied on this information, which caused their injury as they issued bonds they otherwise would not have issued, and ultimately paid millions of dollars to fulfill their obligations under those bonds following Design Build's insolvency. (Id. at ¶¶ 33-34, 52, 58, 81; Gliganic Decl. ¶¶ 6-8.) Therefore, plaintiffs have sufficiently stated a claim for fraud by Design Build.

## IV. REQUESTED RELIEF

Plaintiffs seek damages in the amount of $11,293,103.94. (Mem. Supp. Mot. Default J. 2, 5-6; Gliganic Decl. ¶¶ 6-8.) This amount includes $9,063,103.94 in direct payments that plaintiffs made in connection with Design Build's surety bonds, as specifically set forth below:

| Obligee | Project | Direct Payments by Plaintiffs |
|---|---|---|
| Donohoe Construction Company | Tysons Residential | $2,930,687.66 |
| Donohoe Construction Company | 1200 N. Irving Street | $339,307.13 |
| Paradigm Contractors, LLC | Parc Reston | $2,058,710.42 |
| Bozzuto Construction Company | Petworth Safeway | $896,567.22 |
| Bozzuto Construction Company | Cathedral Commons | $369,418.07 |
| KBR Building Group, LLC | Founders Square | $252,587.82 |
| HITT Contracting, Inc. | Atlantic Plumbing | $1,598,606.10 |
| KBR Building Group, LLC | 8711 Georgia | $71,859.19 |
| John Moriarity & Associates of Virginia | 450 K Street | $238,754.39 |
| HITT Contracting, Inc. | 440 K Street | $96,003.40 |
| Unallocated |  | $210,602.54 |
| **TOTAL** |  | **$9,063,103.94** |

(Gliganic Decl. ¶ 6.) Plaintiffs' total damages amount also includes a $2,230,000.00 initial payment made by plaintiffs to Design Build, in connection with the surety bonds, to fund an operating account, which was never repaid. (Id. at ¶ 7; Compl. ¶ 58.)

Plaintiffs incurred the above damages pursuant to their obligations to third parties and/or Design Build under the surety bonds issued for Design Build. (Compl. ¶¶ 6, 57-58; Gliganic Decl. ¶ 5.) As discussed above, plaintiffs issued those bonds in reliance on the false financial information provided by Design Build, and plaintiffs would not otherwise have issued the bonds. (Compl. ¶¶ 33-34, 52.) Consequently, plaintiffs are entitled to these damages.[4] Therefore, the undersigned recommends that plaintiffs recover from Design Build $11,293,103.94.

---

[4] Based on Design Build's breach of the Capital Retention Agreement, plaintiffs were damaged in the amount of $2.5 million, which is the amount Design Build was required to maintain under that agreement in order to cover its obligations related to the surety bonds. However, that amount is subsumed

16

V.    RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of plaintiffs Allied World Specialty Insurance Company and Allied World Reinsurance Company against defendant Design Build Mechanical Corporation, VA in the total amount of $11,293,103.94.

---

within the total amount that plaintiffs paid to cover the obligations under the surety bonds, which is recoverable under plaintiffs' claims of negligent misrepresentation and fraud.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendant at the following address:

    Design Build Mechanical Corporation, VA
    c/o Ralph Rinaldi, Registered Agent
    10521 Judicial Drive, Suite 204
    Fairfax, VA 22030

                                    /s/
                                 Theresa Carroll Buchanan
                                 United States Magistrate Judge

                                 THERESA CARROLL BUCHANAN
                                 UNITED STATES MAGISTRATE JUDGE

July 21, 2016
Alexandria, Virginia